UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-CR-312-JEB |
| | : | |
| BRADLEY STUART BENNETT, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that Defendant Bradley Stuart Bennett be detained pending trial pursuant to 18 U.S.C. § 3142 (f)(2)(A) (Serious Risk of Flight).   The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pretrial detention.

**Procedural History and Applicable Authority**

On March 19, 2021, this Court issued an Arrest Warrant pursuant to the filed Complaint charging Defendant Bradley Stuart Bennett with one felony count of Obstruction of Justice/Official Proceeding (in violation of 18 U.S.C. § 1512(c)(2)), and five additional misdemeanor counts related to unlawful and/or disorderly conduct at the U.S. Capitol Grounds and U.S. Capitol Building.   These charges stemmed from January 6, 2021, during the timeframe that a joint session of the United States Congress had convened to certify the vote count of the Electoral College of the 2020 Presidential Election.   On April 12, 2021, Defendant surrendered to the United States Marshal Service in the Western District of North Carolina and was arrested

1

pursuant to the Court's arrest warrant.   The government is filing this detention memorandum and is prepared to proceed to argument at the Initial Appearance scheduled for April 29, 2021.

The government seeks detention pursuant to 18 U.S.C. § 3142 (f)(2)(A), as there is proof by a preponderance of the evidence that Defendant poses a serious risk of flight.   Under the Bail Reform Act, the Government may proceed by way of proffer.   *See*, *e.g., United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 42 (D.D.C. 2013; *United States v. Cabrera-Ortigoza*, 196 F.R.D. 271 (S.D. Cal. 2000)).   As is discussed more fully below, Defendant intentionally and purposefully evaded detection for approximately 20 days from when he first knew or suspected that he had a warrant for his arrest.   Defendant is essentially homeless and knows how to survive off the grid.   He therefore poses a serious risk of flight for which there are no conditions or combination of conditions that will reasonably assure Defendant's appearance as required.   This Court should detain Defendant.

### **Factual Background**

### I.      **The Attack on the United States Capitol on January 6, 2021**

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C.   During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m.   Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.   Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate

chamber.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m.  Vice President Pence remained in the United States Capitol from the time he was evacuated from the

Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

## II.    Defendant's Criminal Conduct on January 6, 2021, and Subsequent Identification and Arrest

As outlined in the Complaint, which is publicly available, prior to the riot, Defendant had made multiple posts on social media encouraging people to come to Washington, D.C. on January 6, 2021.   Defendant also announced that he would be present.   By no later than January 2, 2021, Defendant changed his profile picture to read, "FAIR WARNING.   IF THIS ELECTION IS STOLEN FOR BIDEN . . . PATRIOTS WILL GO TO WAR."   On January 6, 2021, Defendant participated in the unlawful, disorderly, and chaotic conduct that occurred on the U.S. Capitol Grounds and inside U.S. Capitol Building.   Social media posts made by Defendant and video captured online from his Facebook account announce that he was outside the Capitol, specifically he states:   we "climbed up," "went through the scaffolding… we're now going to go through the door over here" (wherein Defendant points).   Defendant then announces he was "fighting for freedom."   The camera turns and crowds are seen entering the U.S. Capitol with alarms blaring and people shouting.   In the next clip, Defendant announces, "we're inside the Capitol," turns to his codefendant, and shouts "We're in the Capitol."   His codefendant hollers, "Wooooo."   Defendant and his codefendant appear to be in the Capitol Crypt.   In the final clip, Defendant narrates with "look where I am" and behind him is the Senate floor.   Defendant is in the Senate Gallery.   Stills of this video appear in the Complaint.   Additional evidence uncovered in the

investigation and outlined in the Complaint shows that Defendant admitted on social media that he "Stormed the Capitol" and it was "OUR HOUSE!" He further stated that, "TODAY WAS A REVOLUTIONARY MESSAGE. WE WON'T GO AWAY.  WE WILL FIND VICTORY." Defendant, who had been identified by multiple tipsters and witnesses, also entered and remained in other parts of the Capitol building including the Rotunda.  Based on Defendant's actions on January 6, 2021, the above referenced Complaint and Arrest Warrant were issued on March 19, 2021.

On March 23, 2021, agents attempted to arrest Defendant and his codefendant in Kerrville, Texas, where they had been living.  Agents learned Defendant had moved away around March 13, 2021.  Defendant had rented a vehicle from Kerrville, Texas and returned it in Pineville, North Carolina on March 14, 2021, and departed in a silver or grey sports utility vehicle.  On March 25, 2021, pursuant to a search warrant, agents began tracking Defendant's cellular device, however, the information received did not include precision location information because Defendant had stopped using his cellular network to communicate, opting instead to use Wi Fi connections, had turned off his phone, and/or kept the phone in airplane mode.

Over the next eighteen days, agents received very few leads on Defendant's whereabouts. From what they learned, Defendant was in the Charlotte, North Carolina area, usually in fast-food or business areas with free Wi Fi.  Agents believed that Defendant had received notice of his codefendant's arrest, suspected he was wanted, and began taking steps to avoid his detection and arrest.  Defendant confirmed this belief on March 29, 2021, when he admitted he had been told about his codefendant's arrest by a local Kerrville resident. Additionally, during this period, agents reviewed daily call detail records for Defendant's phone and saw that he continued to communicate

(mostly through text messaging) with others.   Agents contacted several of these individuals.   One individual indicated that he/she had spoken with Defendant and received a voicemail from Defendant.   This individual advised that on March 29, 2021, Defendant reported that his codefendant had been arrested by the FBI. Defendant reported that they (the FBI) were probably looking for him next and Defendant was laying low.   Defendant advised that he could not stay on the phone long because he assumed the FBI was looking for him.   Defendant advised he had starting using the encrypted social messaging app, Telegram, to communicate because of "all the stuff they got going on on the national level."   Two days later, an FBI agent left a voice message and sent a text message to Defendant, advising him about the arrest warrant and his need to surrender.

Defendant did not surrender for twelve days.   During this time, Defendant's whereabouts were unknown to law enforcement and his sister as well as others who had contact with Defendant. Defendant told law enforcement his counsel would contact them on three different occasions. That did not occur until April 9, 2021, when two attorneys contacted a deputy marshal in Charlotte.

Defendant took other steps in the 20-day period from his attempted arrest in Texas to his surrender on April 12, 2021, to avoid detection, arrest, and appearing in this Court.   Of the times that Defendant used his cellular telephone, he communicated from the Charlotte, North Carolina area, but that is not where he had been living.   From approximately March 16, 2021, through March 30, 2021, Defendant stayed with a friend in Fort Mill, South Carolina.   When Defendant decided to leave this residence, Defendant lied about his plans, stating that he was going to stay with family in South Carolina, when Defendant does not have family in that state.   Defendant, an active member of the Facebook community who posted at least every other day or several times a

week, stopped posting all together.   His last post occurred on March 22, 2021.   Defendant started

using the encrypted social messaging app Telegram to communicate with contacts and advised his

friends to communicate with him over Telegram.   Several contacts reported that Defendant would

call and say, "Telegram" and then hang up.

Defendant further admitted he threw his approximate $1000 phone out of the window on

the way to the courthouse, claiming it did not work.   This is Defendant's second iPhone 11 Pro

Max since January 6, 2021.

**<u>Argument</u>**

There are four factors under § 3142(g) that the Court should consider and weigh in

determining whether to detain a Defendant pending trial:   (1) the nature and circumstances of the

offense charged; (2) the weight of the evidence against the defendant; (3) his history and

characteristics; and (4) the nature and seriousness of the danger to any person or the community

that would be posed by his release.   *See* 18 U.S.C. § 3142(g).   In consideration of these factors,

the government respectfully submits that there are no conditions or combinations of conditions

that can effectively ensure the safety of any other person and the community.

**I.     Nature and Circumstances of the Offenses Charged**

Defendant is charged with a felony and five misdemeanor offenses.   These are serious

charges arising out of his conduct prior to and during the January 6, 2021, siege of the U.S. Capitol.

While Defendant did not physically attack law enforcement that day, he clearly demonstrated his

intent to interfere with the certification process (even before coming to the U.S. Capitol) and his

desire to send a "REVOLUTIONARY MESSAGE," through storming the U.S. Capitol.

Defendant's unlawful entry into and presence in the Capitol combined with his statement that "WE

7

WON'T GO AWAY.   WE WILL FIND VICTORY" demonstrates his intent and willingness to engage in disruptive, disorderly, and obstructive conduct.   Given the seriousness of these charges and Defendant's conduct, this factor weighs in favor of detention.

## II.      Weight of the Evidence Against Defendant

The weight of the evidence also clearly weighs in favor of detention.   The evidence against Defendant is overwhelming and compelling, as set forth in the Complaint.   Defendant made numerous posts on his Facebook account about his intentions and actions.   His video and Facebook posts capture his steps before and while he unlawfully entered and remained in the U.S. Capitol.   This factor thus also weighs heavily in favor of detention.

## III.     Defendant's History and Characteristics

The Government recognizes that Defendant does not have a significant criminal history. Nevertheless, this history demonstrates a pronounced and continuous disregard for the law and Defendant's compliance with it.

More importantly, Defendant's actions described above over the 20-day period from the arrest of his codefendant should give this Court great concern about his risk of nonappearance. They demonstrate intentional and purposeful steps to hide from law enforcement (and quite successfully), a complete unwillingness to abide by any conditions if released, and an utter disrespect for our legal system.   Defendant knew or suspected the FBI was looking for him before Defendant admitted this much on March 29, 2021.   Given Defendant's last post on Facebook occurred the day before his codefendant's arrest, the Government believes Defendant knew about or suspected the warrant existed that same day.

Defendant also lacks reliable community ties and a presence in the community.   He is

essentially homeless and a couch jumper.   Since moving to North Carolina, he failed to establish a consistent and reliable residence.   As of the date of his arrest, law enforcement did not have an address for him or know where he had been living.   His estranged sister admitted to law enforcement that she did not know where her brother was located, only that he was staying with an unnamed friend.

Defendant has indicated that he had been living with a friend at an address in Huntersville, North Carolina for a month prior to his arrest.   That is simply not true.   For about the first two weeks after his return to the North Carolina area, Defendant stayed with a friend in Fort Mill, South Carolina.   Defendant left that residence and where he stayed thereafter remains a mystery. Defendant told this friend in Fort Mill that Defendant was going to stay with family in South Carolina, which is also not true.   None of Defendant's family lives in South Carolina. Defendant's proposed living arrangements in Huntersville have not been verified by Probation. Nothing is known about this residence and his purported roommate.

The amount of trust this Court can place in Defendant's word is questionable at best.   As indicated above, Defendant was not truthful about his living situation.   Defendant reports he maintains a close relationship with family.   Yet, his sister did not know where was living or the name of his friend.

The Government also is unaware of any current, steady, and stable employment, despite Defendant's representation.   While Defendant claims to work for Sports Nutrition, the FBI has not located a business by that name in the State of Texas.   Indeed, Defendant's publicly available Linkedin page makes no mention of sports nutrition, but rather suggests he has worked in credit services for the last 10 years.   Attachment A.   Indeed, Defendant offered mentoring, assistance

with making money, and conversation about credit during a recent podcast in which he spoke.[1]

Moreover, some of Defendant's friends do not appear to be reliable and trustworthy. About three days after his arrest, a friend of Defendant's called the United States Marshal Service in the Western District of North Carolina impersonating a law enforcement officer and asking about Defendant's case.   The government also believes that Defendant provided a Deputy Marshal's cellular telephone number to a different friend, who called the Deputy pursuant to "protocol" to ask about Defendant's whereabouts.   Conversely, Defendant did not heed the advice of multiple other friends who advised him to surrender to the FBI.   Defendant's history and characteristics therefore support detention.

## IV.    Danger to the Community and Flight Risk

Defendant prides himself on having the skills to survive off the grid.   Attachment B contains images from his publicly available blog, Battleborn.live, where Defendant offers and sells his expertise in this area to paying customers.   Defendant already hid from law enforcement for 20 days.  No condition or combination of conditions will not prevent him from cutting an ankle monitor and disappearing again.   The only way to reasonably assure his appearance is to detain him.

## <u>Conclusion</u>

For the reasons stated above and for those we anticipate presenting at the detention hearing, the Court should grant the government's motion to detain Defendant pending trial because he has demonstrated that he is a risk of flight and there are no conditions or combination of conditions

---

[1] On December 5, 2020, Defendant appeared on the "Jesus Ortiz Presents: The Push Power to Power Show" which is available online at   http://the-push-power-to-power-show.simplecast.com/episodes/live-interview-with-brad-bennett-bdPSoCNh.

that reasonably assure his appear if released.

                                    Respectfully submitted,

                                    CHANNING D. PHILLIPS
                                    Acting United States Attorney


                        By:     */s/ Monica A. Stump*
                                    Monica A. Stump
                                    PA Bar No. 90168
                                    Assistant United States Attorney
                                    United States Attorney's Office
                                    555 Fourth Street, N.W.
                                    Washington, DC 20530
                                    Phone: (202) 252-2641


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel, Myra Cause, via email, this 28th day of April, 2021.


                                    *  /s/   Monica A. Stump*
                                    Monica A. Stump
                                    Assistant United States Attorney