AO 472 (Rev. 11/16; DC 1/19) Order of Detention

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| Bradley Stuart Bennett ) | Case No.   21-cr-312 (JEB)/(GMH) |
| *Defendant* ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

  ☐ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
  ☒ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:
 ☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):
  ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C.
   § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**
  ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**
  ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**
  ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**
  ☐ **(e)** any felony that is not otherwise a crime of violence but involves:
   **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921);
   **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**
 ☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C.
  § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**
 ☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**
 ☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

☐ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

- ☐ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);
- ☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;
- ☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
- ☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**
- ☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☐ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

☐ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis, with the evidence or argument presented by the defendant summarized in Part III.C.

☐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted for the reasons summarized in Part III.

**OR**

☐ The defendant has not presented sufficient evidence to rebut the presumption. Moreover, after considering the presumption and the other factors discussed below, detention is warranted for the reasons summarized in Part III.

## Part III - Analysis and Statement of the Reasons for Detention

A. After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☐ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☒ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

B. In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☒ Weight of evidence against the defendant is strong
☒ Subject to lengthy period of incarceration if convicted
☐ Prior criminal history
☐ Participation in criminal activity while on probation, parole, or supervision

- ❒ History of violence or use of weapons
- ❒ History of alcohol or substance abuse
- ❒ Lack of stable employment
- ❒ Lack of stable residence
- ❒ Lack of financially responsible sureties
- ❒ Lack of significant community or family ties to this district
- ❒ Significant family or other ties outside the United States
- ❒ Lack of legal status in the United States
- ❒ Subject to removal or deportation after serving any period of incarceration
- ❒ Prior failure to appear in court as ordered
- ☑ Prior attempt(s) to evade law enforcement
- ❒ Use of alias(es) or false documents
- ❒ Background information unknown or unverified
- ❒ Prior violations of probation, parole, or supervised release

**C. OTHER REASONS OR FURTHER EXPLANATION:**

The defendant's evidence/arguments for release:

See attachment.

Nature and circumstances of offense(s):

See attachment.

The strength of the government's evidence:

See attachment.

AO 472 (Rev. 11/16; DC 1/19) Order of Detention

The defendant's history and characteristics, including criminal history:

See attachment.

The defendant's dangerousness/risk of flight:

See attachment.

### Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date: _____05/03/2021_____     _____
                                                United States Magistrate Judge

ATTACHMENT

**The defendant's evidence/arguments for release:**

Defendant, who is charged with multiple offenses relating to the breach of the U.S. Capitol Building on January 6, 2021, asserted that he is not a serious risk of flight and requested that he be released. As to his charged conduct, Defendant proffered that he and his co-Defendant entered the Capitol Building because everyone else was doing so, not because they had planned to. He further emphasized that he entered the Capitol through open doors and without going over any barriers, and that when he entered, law enforcement officers were standing nearby, some of whom were waving people into the Capitol. In addition, Defendant highlighted that he did not engage in any violence in the Capitol or have any sort of tactical gear. He also argued that the government's characterization of his behavior after January 6 as evasive is untrue. Instead, he highlighted that he left Texas—where he had been living with his co-defendant—before the warrant for his arrest was issued, and that any troubles law enforcement had in pinpointing his location were due to his lack of cellphone service during his move and his use of WiFi rather than cellular data. Defendant further proffered that he has close ties to his family and many others in North Carolina and presented character letters to that effect, and that he had recently started renting a home in that area, a fact which his counsel verified. Last, Defendant highlighted that he communicated with law enforcement multiple times and turned himself in on the warrant.

**Nature and circumstances of offense(s):**

Defendant is charged with multiple misdemeanors and one felony for his alleged entry into the Capitol Building on January 6, 2021, and his conduct therein. Indeed, Defendant faces a potential maximum penalty of 20 years imprisonment for his charged felony offense, and the government proffered that his exposure under the Sentencing Guidelines is a minimum of 41 months of incarceration. Although there are no allegations that Defendant engaged in violence

during the breach and he was in the Capitol for just over ten minutes, the government's proffered evidence suggests that he was an active participant in the events on and leading up to the breach. Defendant allegedly climbed scaffolding to enter the Capitol, and he admitted on social media that he had "Stormed the Capitol." In addition, contrary to Defendant's assertion that he was simply following what everyone else was doing, the government proffered that prior to January 6, Defendant posted on social media encouraging people to go to Washington, D.C. on January 6, and that he changed his profile picture to say that "IF THIS ELECTION IS STOLEN FOR BIDEN . . . PATRIOTS WILL GO TO WAR." After January 6, Defendant also allegedly posted online that "We won't go away.  We will find victory." Although Defendant's conduct during the Capitol breach is far from the most egregious this Court has seen, his apparent continued support for the cause behind the insurrection and his significant penalty exposure make this factor weigh in support of detention on flight risk grounds.

**The strength of the government's evidence:**

The government's evidence is very strong, which, when combined with the potentially high penalty Defendant faces if convicted on the felony charge, provides a strong incentive for him to flee; therefore, this factor also weighs in favor of pretrial detention on flight risk grounds. The government proffered that prior to, during, and after January 6, Defendant made numerous inculpatory statements in posts on social media about his intentions, motivations, and actions. There are also available photos of the riot and Capitol surveillance footage showing Defendant and his co-defendant in the Capitol. Indeed, either Defendant or his co-defendant posted videos on social media showing them entering the Capitol and Defendant in the gallery of the Senate Chamber. In addition, a confidential informant identified Defendant from images collected by the government. Defendant argued that he may have a defense to the criminal charges based on

his following of former President Trump's orders. Although that issue is not before this Court, the undersigned agrees with Chief Judge Howell that the defense is unlikely to be successful. *See United States v. Chrestman*, 2021 WL 765662, at *12 (D.D.C. Feb. 26, 2021) (noting that "as applied generally to charged offenses arising out of the January 6, 2021 assault on the Capitol, an entrapment by estoppel defense is likely to fail").

**The defendant's history and characteristics, including criminal history:**

Defendant has a minimal criminal history that lacks any bench warrants or serious violations of supervision, as well as any convictions for failures to appear or contempt. Even so, this factor too weighs in favor of pretrial detention on flight risk grounds. Although Defendant's proffer that law enforcement's perception that he as eluding arrest for approximately twenty days was principally the result of his relocation across the country, the Court finds that the more likely inference is that Defendant was actively trying to evade arrest.

According to the government's proffer, law enforcement attempted to arrest Defendant at his prior residence in Texas on March 23, 2021. Defendant—whom the government proffered had previously been a frequent poster on social media—last posted on March 22, the day before his co-defendant's arrest. This suggests he was aware of his co-defendant's arrest soon after it occurred. Indeed, on March 29, the government proffers that the Defendant told an acquaintance that Defendant knew of his co-defendant's arrest and was "laying low," because he expected that law enforcement was looking for him. According to the government's proffer, he further said to the acquaintance that "he could not stay on the phone long because he assumed the FBI was looking for him." Indeed, the government proffered that it had received 1,900 reports from Defendant's phone pursuant to a search warrant, but that only 12 of the results contained location information. The government noted that this absence of location data means Defendant was likely

3

keeping his phone disconnected from the cellular network, by using WiFi for example, to avoid detection. The government proffered that Defendant further advised the acquaintance on March 29 that he had "started using the encrypted social messaging app, Telegram to communicate because of 'all the stuff they got going on on the National level.'" In fact, the government proffers that the Defendant used the encrypted Telegram application to communicate with people. Indeed, multiple individuals informed law enforcement that Defendant would call them just long enough to say the name of the application—"Telegram"—before hanging up, signaling, according to the government, that the individuals should communicate with him through Telegram. The government further proffers that, as a result of Defendant's efforts, the FBI could not locate the Defendant for the approximately 20 days between March 23 and Defendant's self-surrender on April 12. The court credits Defendant's decision to self-surrender which he communicated to the FBI on April 9, but cannot ignore the effort, and ability he demonstrated, to evade law enforcement prior to that decision. Further, the government proffers that no later than the evening prior to his self-surrender on April 12, the Defendant admitted that had "tossed [his iPhone] somewhere along I-77" because it broke. The Court finds that his disposal of his phone the evening before he had committed to turn himself in is additional evidence of his elusiveness, and undermines the assertion that his self-surrender reflected a change of heart and demonstrated his willingness to comply with the law.

**The defendant's dangerousness/risk of flight:**

Defendant poses a serious risk of flight that cannot be adequately mitigated by any conditions of release. The government's proffered evidence suggests not only that Defendant was attempting to evade law enforcement over the course of multiple weeks because he expected that law enforcement was looking for him and he was "laying low," but also that he was quite

4

successful in doing so. According to the government's proffer, for approximately twenty days, Defendant's location was unknown to his acquaintances, his sister, and even the FBI.  He accomplished this, according to the government, by quitting social media, by rarely connecting his phone to a cellular network to reveal his location, by using an encrypted application to communicate with friends, and by signaling to friends to use that encrypted application through short calls.  Further, he took twelve days to self-surrender after first communicating with law enforcement, and, after committing to turn himself in, he disposed of his phone by tossing it "somewhere along I-77" because he said it was broken. The Court finds that even location monitoring would be insufficient to reasonably assure Defendant's appearance, as a defendant determined to flee may remove monitor devices, and notification of the removal of such devices is frequently delayed.