**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 21-CR-312 (JEB)** |
| | : | |
| **BRADLEY BENNETT** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS INDICTMENT**

The defendant, Bradley Bennett, filed a motion to dismiss the indictment (ECF No. 103). Bennett makes multiple arguments with respect to Count One of the indictment, including: (1) Count One of the indictment, which alleges that Bennett violated 18 U.S.C. § 1512(c)(2), should be dismissed because it does not allege that the defendant acted corruptly; (2) the text of § 1512(c)(2) is unconstitutionally vague; and (3) Count One should be dismissed because it failed to allege that Bennett tampered with or destroyed any evidence. But the government obtained a Superseding Indictment that cured any defect with the original pleading language. Moreover, the D.C. Circuit, this Court, and many other courts in this District have rejected similar arguments. Bennett's next argument, that the remaining counts of the indictment are mutiplicitous, is similarly without merit. Bennett's motion to dismiss should be denied.

**PROCEDURAL BACKGROUND**

On April 21, 2021, a grand jury returned an Indictment charging Bennett with: Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2), and 2 (Count One); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); Entering and Remaining in the

Gallery of Congress, in violation of 40 U.S.C. § 5104(e)(2)(B) (Count Four); Disorderly Conduct

in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Five); and Parading,

Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G)

(Count Six). *See* ECF No. 15.

On August 15, 2023, Bennett filed a motion to dismiss the Indictment (ECF No. 103).

On September 6, 2023, a grand jury returned a Superseding Indictment, charging Bennett

with the same six offenses, but modifying some of the charging language.  In particular, Count

One now alleges:

> On or about January 6, 2021, within the District of Columbia and elsewhere, **BRADLEY STUART BENNETT** attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

*See*, Exhibit 1, Superseding Indictment.  The Superseding Indictment also modified the language

alleged in Counts Two and Three by removing references to the Vice President elect.  *See, Id.*

## FACTUAL BACKGROUND

The following facts are based on those alleged in the Statement of Facts filed with the

underlying criminal complaint on March 19, 2021 (ECF No. 1), and additional information learned

during the course of the investigation.

The charges in this case stem from Bennett's unlawful conduct at the U.S. Capitol on

January 6, 2021.  On January 6, 2021, a Joint Session of the United States House of Representatives

and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S.

Presidential Election. While the certification process was proceeding, a large crowd, including

Bennett, gathered outside the United States Capitol, entered the restricted grounds, and forced

entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of

the Congress were halted until law enforcement was able to clear the Capitol and its grounds of the thousands of unlawful occupants and ensure the safety of elected officials.

In the months leading up to January 2021, Bennett sent messages and posted on Facebook about the certification proceeding.  For example, on November 17, 2020, Bennett posted on Facebook that he was "in the loop of information" and knew about the upcoming "Constitutional process" involving "an electoral college, Congress and SENATE certification by Vice President Pence" that would officially decide who would be the "President-elect." On December 14, 2020, the day the electoral college met in each of the states, Bennett sent a message to his then-girlfriend Elizabeth Rose Williams identifying "January 6" as the "official…vote day" in Congress:

> Couple pointers today as electors vote.   1. Pa Nevada GA voted Trump Pence  2. Those for example on the Michigan vote session in Congress illegally selecting Biden, are knowingly defrauding the American voters and literally  signing their TREASON evidence on these documents and are about pay dearly.   3. January 6 is the official UNITED STATES CONGRESS vote day and 1/20 is the true day that matters.   Stay cool & watch how awesome the next scene is for FREEDOM!!

A few days later, Bennett posted on Facebook about making "EPIC HUGE noise" at the Capitol on January 6, 2021.

On January 6, 2021, Bennett attended the former President's rally.  Following the former President's rhetoric about a stolen election, Bennett and Williams began walking towards the Capitol.

Once Bennett and Williams reached the restricted Capitol grounds, they joined a large crowd by the scaffolding for the inaugural stage.  They made their way up to the North West Terrace of the Capitol, and went into the Capitol through a broken-out doorway known as the Senate Wing Door.  Once inside, Bennett and Williams walked south through the Crypt and went upstairs to the Rotunda.  From the Rotunda, they went up the Gallery Stairs, and went into the

Senate Gallery. Bennett and Williams spent approximately 25 minutes inside the Capitol—from approximately 2:23 p.m. to 2:49 p.m. –before leaving through the Senate Carriage Door.

That evening, at approximately 6:00 p.m., Bennett posted on Facebook about his experience, leading with "CAPITOL WAS STORMED" and recalling that he was "hardcore tear gassed by cap[itol] police" before the building was breached. Approximately two hours later, Bennett admitted that he "stormed" the Capitol and that he went "in that senate room."

## LEGAL STANDARD

A defendant may move to dismiss an indictment or count thereof for failure to state a claim prior to trial. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). However, the Federal Rules of Criminal Procedure state that an indictment is only required to contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). "An indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged." *United States v. Bowdin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.* An indictment must contain every element of the offense charged, if any part or element is missing, the indictment is defective and must be dismissed." *See United States v. Hillie*, 227 F. Supp. 3d 57, 70 (D.D.C. 2017). Because pretrial dismissal of an indictment "directly encroaches upon the fundamental role of the grand jury, dismissal is granted only in unusual circumstances." *United States v. Ballestas*, 795 F. 3d 138, 148 (D.C. Cir. 2015) (internal quotation marks omitted).  Ultimately, the court must decide "whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed."  *United States v. Bowdoin*, 770 F. Supp 2d 142, 146 (D.D.C. 2011).

## **ARGUMENT**

**I.   Count One (Obstruction of an Official Proceeding) Should Not Be Dismissed**

Bennett puts forth three reasons why Count One should be dismissed, but all three are foreclosed by precedent.  Indeed, in the case Bennett cites—*United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023)—the D.C. Circuit directly rejected the same arguments Bennett makes here. Likewise, this Court has previously rejected most of Bennett's arguments in *United States v. Mostofsky*, 579 F. Supp. 3d 9 (D.D.C. 2021).[1]

**A.   The Indictment Sufficiently Alleges all the Elements of Section 1512(c)(2)**

The Superseding Indictment (like the first indictment) sufficiently alleges a violation of Section 1512(c)(2), as the D.C. Circuit's recent opinion in *Fischer* confirms.  Indeed, the language alleged in the Superseding Indictment mirrors the language approved in *Fischer*.  *Compare*, *Fischer*, 64 F.4th at 333,[2] *with* Exh. 1, at 1.

---

[1] The Defendant's arguments have also been rejected by the majority of judges in this District. *See, e.g., United States v. Puma*, 596 F. Supp. 3d 90 (D.D.C. 2022) (Friedman, J.); *United States v. Fitzsimons*, 21-cr-158, 605 F. Supp. 3d 132 (D.D.C. 2022) (Contreras, J.); *United States v. Bingert*, 21-cr-91, 605 F. Supp. 3d 111 (D.D.C. 2022) (Lamberth, J.); *United States v. Hale-Cusanelli*, 21-cr-37, ECF 82 (D.D.C. May 6, 2022) (McFadden, J.) (motion to dismiss hearing at pp. 4-8); *United States v. McHugh* (*McHugh II*), 21-cr-453, 2022 WL 1302880 (D.D.C. May 2, 2022) (Bates, J.); *United States v. Bozell*, 21-cr-216, 2022 WL 474144, at *5 (D.D.C. Feb. 16, 2022) (Bates, J.); *United States v. Grider*, 21-cr-22, 585 F. Supp. 3d 21 (D.D.C. 2022) (Kollar-Kotelly, J.); *United States v. Nordean*, 21-cr-175, 579 F. Supp. 3d 28 (D.D.C. 2021) (Kelly, J.); *United States v. Montgomery*, 21-cr-46, 578 F. Supp. 3d 54 (D.D.C. 2021) (Moss, J.); *United States v. Caldwell*, 21-cr-28, 581 F. Supp. 3d 1 (D.D.C. 2021) (Mehta, J.); *United States v. Sandlin*, 21-cr-88, 575 F. Supp. 3d 16 (D.D.C. 2021) (Friedrich, J.).

[2] In *Fischer*, the indictment alleged "On or about January 6, 2021, within the District of Columbia and elsewhere, [Fischer, Lang, and Miller] attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15–18." *Fischer*, 64 F.4th at 333.

The Superseding Indictment specifically alleges that Bennett "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote." Exh. 1, at 1. This language "sets forth all the required elements," informs Bennett of "the precise offense so that" he may prepare a defense," and would allow him "to plead double jeopardy in any future prosecution for the same offense." *United States v. Munchel*, No. 1:21-CR-118-RCL, 2023 U.S. Dist. LEXIS 67141, at *4 (D.D.C. April 18, 2023) (denying motion to dismiss 1512 charge with language identical to that in the Superseding Indictment). Indeed, the Superseding Indictment "here uses language tracking the statute and alleges that [the defendant] 'attempted to, and did, corruptly obstruct, influence, and impede an official proceeding.' . . . That is sufficient." *Id.* at *15; *see, e.g., United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) ("[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.' . . . Rather, to be sufficient, an indictment need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense.") (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)).

To the extent Bennett seeks to have government disclose the specific "corrupt act or motive," that is "exactly the kind of '*how'* details that the government is *not* required to fill an indictment with." *Munchel*, 2023 U.S. Dist. LEXIS 67141, at *7. The government need not allege motive, and the Court should deny the motion on this ground.

Bennett also argues that Count One does not "identify a particular 'proceeding before Congress.'" (ECF No. 103, 6.) The Superseding Indictment moots this argument as Count One now specifically identifies the proceeding before Congress as specifically, Congress's certification of the Electoral College vote.

**B.      Section 1512(c)(2) is Not Unconstitutionally Vague**

Bennett next argues that the term "corruptly," as used in Section 1512(c), is unconstitutionally vague, rendering the statute constitutionally invalid.  (ECF No. 103 at 13-15.) Bennett also makes additional arguments under the vagueness doctrine, arguing that engaging in "disorderly conduct" does not satisfy the definition of corrupt (ECF No. 103 at 13), and his alleged conduct does not satisfy the statute's corrupt element under any of the panel's decisions in *Fischer*. (ECF No. 103 at 7-8). As an initial matter, this argument is irrelevant at this stage because Count One is properly pled. Recognizing that the court had not agreed upon a definition of "corruptly," Judge Walker in *Fischer* explained that the indictments in that case nonetheless "should be upheld" because "[e]ach contains 'the essential facts constituting the offense charged.'  That's because they alleged that the defendants 'corruptly obstruct[ed], influence[d], and impede[d] an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote."  *Fischer*, 64 F.4th at 361 (Walker, J., concurring) (quoting Fed. R. Crim. P. 7(c)(1)).  So too here: the Superseding Indictment sufficiently alleges that Bennett acted corruptly, and the Court should leave the exact definition of that term for another day, when the issue is properly before the Court.  *See Munchel*, 2023 WL 2992689, at *5 ("First, the 'corruptly' language in the statute is not undefined, vague, or limited to situations where a defendant personally benefited.  While the lead opinion and concurring opinion in *Fischer* were at odds regarding the precise bounds of the corrupt *mens rea*, both agreed that . . . an indictment alleging a corrupt *mens rea* in the same manner as the one in this case survives a motion to dismiss.") (citing *Fischer*, 64 F. 4th 329). The Superseding Indictment alleges the corrupt *mens rea* in the same manner as *Fischer*.

In any event, the term "corruptly" is not unconstitutionally vague.  The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from "depriv[ing] any person of life, liberty, or property, without due process of law."  An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).  Notably, the void for vagueness doctrine is narrow.  The challenger must overcome a strong presumption that duly enacted statutes are constitutional. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.").

Accordingly, the void for vagueness doctrine "does not invalidate every statute which a reviewing court believes could have been drafted with greater precision." *Rose v. Locke*, 423 U.S. 48, 49 (1975) (per curiam).  Rather, a statute is unconstitutionally vague only if it "proscribe[s] no comprehensible course of conduct at all." *United States v. Powell*, 423 U.S. 87, 92 (1975).  "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306 (2008).  Indeed, district courts here have recognized a high bar for rendering a statute unconstitutionally vague and has advised:

> [N]o void for vagueness challenge is successful merely because a statute requires a person to conform his conduct to an imprecise but comprehensible normative standard, whose satisfaction may vary depending upon whom you ask.  Instead, unconstitutional vagueness arises only if the statute specifies no standard of conduct at all.

*United States v. Gonzalez*, No. 20-cr-40-BAH, 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020) (internal citation and quotation omitted); *see also United States v. Harmon*, No. 19-cr-395-BAH, 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 void-for-vagueness motion).  In sum, as this Court has held, "[a] statutory term is not rendered unconstitutionally vague because it does not mean the same thing to all people, all the time, everywhere. . . . Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning specifies no standard of conduct . . . at all." *Puma*, 576 F. Supp. 3d at 103 (quoting *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017)).

Although the D.C. Circuit did not resolve the meaning of the term "corruptly" in *Fischer*, both judges who joined the lead opinion determined that term is not unconstitutionally vague as used in Section 1512(c).  *See Fischer*, 64 F.4th at 339-42 (Pan, J.) (explaining that, under any formulation, "'corrupt' intent exists at least when an obstructive action is independently unlawful," and that "appellees err in arguing that the term 'corruptly' 'takes on unconstitutional vagueness' in circumstances outside the context of a judicial proceeding"); *id.* at 352 (Walker, J.) (explaining that his interpretation of "corruptly" "avoids vagueness").

Within this District, the courts have agreed.  "The text of Section 1512(c), and the inclusion of the term 'corruptly,'" Judge Friedman concluded, "'gives fair notice of the conduct it punishes' and does not invite 'arbitrary enforcement.'" *Puma*, 576 F. Supp. 3d at 103 (quoting *Johnson*, 576 U.S. at 596).  Further, "[j]udges in this district have construed 'corruptly' to require 'a showing of dishonesty' or an 'improper purpose'[;] 'consciousness of wrongdoing'[;] or conduct that is 'independently criminal,' 'inherently malign, and committed with the intent to obstruct an official proceeding.'" *Id*. (quoting *Montgomery*, 578 F. Supp. 3d at 81; *Bozell*, 2022 WL 474144, at *6;

*Caldwell*, 581 F. Supp. 3d at 19-20; and *Sandlin*, 575 F. Supp. 3d at 33) (alterations omitted).[3]

"These constructions," the court concluded, "support a consensus that Section 1512(c) clearly

punishes those who endeavor to obstruct an official proceeding by acting with a corrupt purpose,

or by independently corrupt means, or both." *Id*. Under any of these common-sense constructions,

the term "corruptly" "not only clearly identifies the conduct it punishes; it also 'acts to shield those

who engage in lawful, innocent conduct—even when done with the intent to obstruct, impede, or

influence the official proceeding.'" *Id.* (quoting *Sandlin*, 575 F. Supp. 3d at 33). It presents no

vagueness concern.

      With respect to Bennett's argument regarding the panel's definitions of "corruptly" in

*Fischer*, the court did not pronounce an authoritative holding on the meaning of "corruptly" in

Section 1512(c)(2). In the portions of the lead opinion (Pan, J.) joined in full by the concurring

judge (Walker, J.), *Fischer* relied on Section 1512(c)(2)'s text and structure as well as case law

interpreting the statute, *see id.* at 335-39, to conclude that Section 1512(c)(2) "encompasses all

forms of obstructive conduct, including . . . efforts to stop Congress from certifying the results of

the 2020 presidential election." *Id.* at 335. In a section of the lead opinion that Judge Walker did

not join, Judge Pan reasoned that "[t]he requirement of 'corrupt' intent prevents [Section]

1512(c)(2) from sweeping up a great deal of conduct that has nothing to do with obstruction," but

refrained from defining "the exact contours of 'corrupt' intent" because "the task of defining

---

[3] Indeed, upon information and belief, most courts to evaluate this question in the January 6 context, have promulgated jury or bench instructions that has adopted some form of this language, often adding that the defendant must use unlawful means or act with an unlawful purpose. *See, e.g.*, *United States v. Sara Carpenter*, 21-cr-305-JEB (ECF 95); *United States v. Thomas Robertson*, 21-cr-34-CRC (ECF 86); *United States v. Dustin Thompson*, 21-cr-161-RBW (ECF 83); *United States v. Anthony Williams*, 21-cr-377-BAH (ECF 112); *United States v. Alexander Sheppard*, 21-cr-203-JDB (final instructions not available on ECF); *United States v. Elmer Rhodes, et al*, 22-cr-15-APM (ECF 396); *United States v. Doug Jensen*, 21-cr-6-TJK (ECF 97).

'corruptly'" was not before the Court. *Id.* at 340 (opinion of Pan, J.). Judge Walker, believing that defining "corruptly" was necessary to "make sense" of [Section 1512](c)(2)'s act element," wrote a concurring opinion in which he proposed defining the term to mean to "act with an intent to procure an unlawful benefit either for oneself or for some other person." *Id.* at 352 (Walker, J., concurring) (citation omitted). The dissenting opinion (Katsas, J.) criticized the concurrence's definition of "corruptly" because it "required transplanting" into Section 1512(c)(2) an interpretation "that appears to have been used so far only in tax law," but did not endorse any other definition of the term. *Id.* at 381 (Katsas, J., dissenting).

As explained in both the lead and dissenting opinions in *Fischer*, the definition of "corruptly" was not squarely presented in that case and therefore was not resolved. *See id.* at 340-41 (opinion of Pan, J.) ("expressing [no] preference for any particular definition of 'corruptly'" because "the allegations against appellees appear to be sufficient to meet any proposed definition of 'corrupt' intent"); *id.* at 341 (noting that the dissent also "declines to settle on a precise meaning of 'corruptly' at this time" and thus "share[s] much common ground" with the lead opinion "on the issue of *mens rea*"); *id.* at 379-81 (Katsas, J., dissenting) (surveying possible definitions of "corruptly" but declining to adopt any particular one). Although the concurrence would have determined that "corruptly" means "a criminal intent to procure an unlawful benefit," *id.* at 352 (Walker, J., concurring), the resolution of that *mens rea* issue was not necessary to the court's holding concerning the *actus reus* of the offense—which Judge Walker joined by concurring in all but a section and a footnote in the lead opinion and concurring in the judgment—and his views on the meaning of "corruptly" were not adopted by the other judges on the panel.

Reading *Fischer* to have left unresolved the definition of "corruptly" in Section 1512(c)(2) is consistent with how the case was litigated. Although the defendant argued below that Section

1512(c)(2)'s *mens rea* requirement was unconstitutionally vague, *see United States v. Miller*, 589 F. Supp. 3d 60, 65 (D.D.C. 2022), the district court did not address that argument and specifically declined to interpret "corruptly" when adjudicating the government's reconsideration motion, *see United States v. Miller*, 605 F. Supp. 3d 63, 70 n.3 (D.D.C. 2022).  The question presented in *Fischer* concerned Section 1512(c)(2)'s *actus reus* requirement, *see* Brief for the United States, *United States v. Fischer*, No. 22-3038, at 2-3 (whether Section 1512(c)(2) covers the defendants' "alleged conduct"), and the government's opening 68-page brief devoted only three pages to addressing "corruptly" when discussing limitations on the statute's reach.  *See Fischer*, 64 F.4th at 340 (opinion of Pan, J.) (noting that the parties addressed "corruptly" "only peripherally" in the briefs).  With respect to defining "corruptly" in Section 1512(c)(2), the Court in *Fischer* did not have the "benefits of the normal litigation process," *id.*, which in turn risks an "improvident or ill-advised" ruling on an issue not squarely presented, *United States v. West*, 392 F.3d 450, 459 (D.C. Cir. 2004).  As demonstrated in the facts above, the defendant knew that Congress's certification of the electoral college vote was occurring, he believed the election was stolen, he stormed the Capitol that day to obstruct this proceeding, and his actions, coupled together with the conduct of other rioters, delayed this proceeding. His conduct squarely falls into the one definition the court in *Fischer* agreed upon, that 1512(c)(2) "encompasses all forms of corrupt obstruction of an official proceeding, including . . . efforts to stop Congress from certifying the results of the 2020 presidential election." 64 F.4th at 335.  Bennett is asking the court to make a ruling on the definition of "corruptly" based on a matter in *Fischer* that was not authoritatively decided. Therefore, Bennett's argument on this issue should be denied.

Lastly, Bennett also suggests that he did not act "corruptly" because his actions were not violent. (ECF No. 103 at 8-9.) According to Bennett, *Fisher* holding does not apply here because,

unlike the defendants in *Fischer*, Bennett has not been "charged with threatening or committing violent acts." *Id.* at 8. But *Fischer*'s holding is not limited to cases involving assaultive conduct. Although the defendants in *Fischer* were alleged to have engaged in assaults on law enforcement officers, the D.C. Circuit held that Section 1512(c)(2) applies more broadly to "*all* forms of obstructive conduct[.]" 2023 WL 2817988, at *3 (emphasis added). The court explained that "the meaning of the statute is unambiguous. . . . Under the most natural reading of the statute, § 1512(c)(2) applies *to all forms of corrupt obstruction of an official proceeding*, other than the conduct that is already covered by § 1512(c)(1)." *Id.* at *4 (emphasis added). The court concluded that "[this] broad interpretation of the statute — encompassing all forms of obstructive acts — is unambiguous and natural, as confirmed by the 'ordinary, contemporary, common meaning' of the provision's text and structure." *Id.* at *5 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). It is impossible to read the D.C. Circuit's repeated references to Section 1512(c)(2)'s prohibition on "all forms" of obstructive acts as somehow limiting the statute's scope to obstructive acts involving assault. Bennett's suggestion that he did not act corruptly because he was not violent (ECF No. 103 at 8-9) is not supported by the law and should be denied.

## C.   *Fischer* Makes Clear That Section 1512(c)(2) "Encompasses all forms of obstructive conduct"

Bennett argues that Count One should be dismissed because the indictment "fails to allege that Mr. Bennett tampered with or destroyed any evidence" (ECF No. 103, at 15). Bennett's arguments on this point is foreclosed by the D.C. Circuit's opinion in *Fischer* and should be denied. Indeed, Bennett acknowledges this and "presents the argument" only to "preserve" the issue should the *Fisher* opinion be overruled.  (ECF No. 103, at 16 n. 2.)

*Fischer* made clear that obstructive conduct can include conduct other than the destruction of evidence. 64 F.4th at 334. In *Fischer*, the D.C. Circuit addressed a pretrial ruling that Section

1512(c)(2) "'requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding.'"  64 F.4th at 334.  Because the indictments in the cases on appeal did not allege that the defendants "violated § 1512(c)(2) by committing obstructive acts related to 'a document, record, or other object,' the district court dismissed the § 1512(c)(2) counts."  *Id.*  The government appealed and the D.C. Circuit reversed, holding Section 1512(c)(2) "encompasses all forms of obstructive conduct, including . . . efforts to stop Congress from certifying the results of the 2020 presidential election."  *Id.* at 335.  The court concluded that, "[u]nder the most natural reading of the statute, § 1512(c)(2) applies to all forms of corrupt obstruction of an official proceeding, other than the conduct that is already covered by § 1512(c)(1)."  *Id.* at 336 (concluding that this "broad interpretation of the statute—encompassing all forms of obstructive acts—is unambiguous and natural, as confirmed by the 'ordinary, contemporary, common meaning' of the provision's text and structure") (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).  This portion of the opinion was authored by Judge Pan and joined by Judge Walker, and thus constitutes *Fischer*'s binding holding.   *Fischer* thus confirms that the indictment in this case is sufficient notwithstanding the fact that it does not allege obstructive acts related to a document, record, or other object.  *See Fischer*, 64 F.4th at 332; *see also Puma*, 596 F. Supp. 3d at 106-08 ("In sum, Section 1512(c)(2) gives defendants fair warning in plain language that a crime will occur in a different ('otherwise') manner compared to § 1512(c)(1) if the defendant 'obstructs, influences, or impedes any official proceeding' without regard to whether the action relates to documents or records.") (citing *United States v. Caldwell*, 581 F. Supp. 3d 1, 21 (D.D.C. 2021)). Bennett's argument on this issue is an incorrect analysis of *Fischer* and should be denied.

### D.      The Rule of Lenity Does not Apply

Finally, the D.C. Circuit has rejected Bennett's argument that it is unfair to prosecute him for obstruction of an official proceeding because he was not on fair notice of the conduct that Section 1512(c)(2) punishes.  (ECF No. 103 at 14-15.)  The rule of lenity, however, applies "only when a criminal statute contains a 'grievous ambiguity or uncertainty,' and 'only if, after seizing everything from which aid can be derived,' the Court 'can make no more than a guess as to what Congress intended.'"  *Fischer*, 64 F.4th at 350 (quoting *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (1994)).  In addressing a rule of lenity argument from another January 6 defendant, the Circuit concluded, "the language of § 1512(c)(2) is clear and unambiguous.  Restraint and lenity therefore have no place in our analysis."  *Id.*

## II.      Counts Two Through Six Are Not Multiplicitous

Bennett also asserts that counts two through six are multiplicitous and therefore should be dismissed.  (ECF No. 103 at 16.)  Bennett is wrong.

A defendant may be convicted of and sentenced under different statutory provisions for multiple offenses arising out of the same single act or course of conduct so long as Congress authorized the imposition of such multiple punishments.  *See United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir. 1998) ("If the legislature intends to impose multiple punishment, imposition of such sentences does not violate Double Jeopardy.").  "To determine multiplicity vel non, courts generally apply the *Blockburger* test: '[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not,' i.e., whether either is a lesser included offense of the other."  *United States v. Mahdi*, 598 F.3d 883, 888 (D.C. Cir. 2010) (quoting *United States v. Weathers*, 186 F.3d 948, 951 (D.C. Cir. 1999),

and *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).  If the two offenses each require proof of a fact the other does not, then the charges are not multiplicitous.  *Id.* at 890.[4]  The *Blockburger* "test focuses on the statutory elements of the offense, not on the proof offered in a given case."  *United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir. 1998).  Thus, it is irrelevant whether there is significant overlap in the factual proof of each count at trial, or even whether two counts "are based upon the exact same set of facts and circumstances," as long as each count's elements require proof of a fact that the others do not.  *United States v. Manafort*, 313 F. Supp. 3d 311, 314 (D.D.C. 2018); *see id.* ("[T]he test for multiplicity is not whether two counts are based on the same set of facts; rather, it is whether the statutory elements of the two offenses are the same.").

Here, Bennett's multiplicity arguments fail because each of the offenses charged in the superseding indictment "requires proof of a fact which the other does not."  *Blockburger*, 284 U.S. at 304.  Indeed, these are not close questions—which is likely why Bennett does not even attempt to evaluate or analyze the statutes' elements. Many of the Counts require proof of multiple facts not required by the other Counts, and all require proof of at least one.  Thus, the indictment satisfies *Blockburger*.[5]

---

[4] On the other hand, if two offenses fail the *Blockburger* test—because one is a lesser-included offense of the other—that is not the end of the inquiry.  In that scenario, the "*Blockburger* test . . . provides only a canon of construction, not a 'conclusive presumption of law,' *id.* at 888 (quoting *Garrett v. United States*, 471 U.S. 773, 779 (1985)), because there "'is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and *punishing also the completed transaction.*'" *Id.* (quoting *Garrett*, 471 U.S. at 779) (emphasis in original).  Here, the offenses clearly each require proof of a fact the others do not, so it is not necessary to conduct this further analysis.

[5] As discussed above, the grand jury returned a superseding indictment, charging the defendant with the same counts as the original indictment (ECF No. 15). The language in Count One, Two, and Three was updated in preparation for trial. The superseding indictment does not change the government's position regarding *Blockburger*.

First, Count Two charges a violation of Sections 1752(a)(1) of Title 18, which applies to a defendant who "knowingly enters or remains in any restricted building or grounds without lawful authority to do so." 18 U.S.C. § 1752(a)(1).  The elements of that offense are:

1)   The defendant entered or remained in a restricted building or grounds without lawful authority;
2)   The defendant did so knowingly;

Count Three charges a violation of Section 1752(a)(2) of Title 18, which applies to a defendant who "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions." 18 U.S.C. § 1752(a)(2). The elements of that offense are:

1)   The defendant engaged in disorderly or disruptive conduct;
2)   The defendant did so knowingly;
3)   The conduct was in, or within such proximity to, a restricted building or grounds;
4)   It was done when, or so that, such conduct in fact impeded or disrupted the orderly conduct of government business or official functions;

Count Four charges a violation of Section 5104(e)(2)(B) of Title 40, which applies to a defendant who ""willfully and knowingly. . . (B) entered and remained in the gallery of either House of Congress, without authorization to do so." 40 U.S.C. § 5104(e)(2)(B). The elements of that offense are:

1)   The defendant entered or remained in a gallery of either House of Congress, without authorization to do so.
2)   The defendant did so willfully and knowingly;

Count Five charges a violation of Section 5104(e)(2)(D) of Title 40, which applies to a defendant who "willfully and knowingly. . . (D) engaged in disorderly and disruptive conduct within the United States Capitol Grounds and in any of the Capitol Buildings with the intent to

impede, disrupt, and disturb the orderly conduct of a session of Congress and either House of Congress, and the orderly conduct in that building of a hearing before or any deliberation or, a committee of Congress or either House of Congress." 40 U.S.C. § 5104(e)(2)(D).  The elements of that offense are:

1)   The defendant engaged in disorderly and disruptive conduct
2)   The defendant did so willfully and knowingly;
3)   The defendant did so in any of the Capitol Buildings;
4)   The defendant did so with the intent to impede, disrupt and disturb the orderly conduct of a session of Congress and either House of Congress, and the orderly conduct in that building of a hearing before or any deliberation or, a committee of Congress or either House of Congress.

Count Six charges a violation of Section 5104(e)(2)(G) of Title 40, which applies to a defendant who "willfully and knowingly. . . (G) paraded, demonstrated, and picketed in any United States Capitol Building." 40 U.S.C. § 5104(e)(2)(G).  The elements of that offense are:

1)   The defendant paraded, demonstrated, and picketed;
2)   The defendant did so willfully and knowingly;
3)   The defendant did so in any United States Capitol Buildings;

These five counts are not multiplicitous.  Count Two requires proof that the defendant "entered and remained in a restricted building and grounds" (element 1 of Count Two). The other Counts do not require proof of this element.

Count Three, meanwhile, requires proof that the defendant engaged in "disorderly or disruptive conduct" (element 1 of Count Three). Although similar to Count Five, Count Three also requires proof that the defendant's conduct "in fact impede[d] or disrupt[ed] the orderly conduct of government business or official functions" (element 4 of Count Three), which the other Counts do not.

Count Four requires proof that the defendant "entered and remained." Although similar Count Two, Count Five also requires proof that the defendant was "in the gallery of either House of Congress. The other Counts do not require this element.

Count Five requires proof that the defendant intended to "impede, disrupt and disturb the orderly conduct of a session of Congress and either House of Congress and either House of Congress, and the orderly conduct in that building of a hearing before or any deliberation or, a committee of Congress or either House of Congress," which Counts Two, Three Four, and Six do not.

Finally, Count Six requires proof of facts showing that the defendant "paraded, demonstrated, and picketed," which the other Counts do not.

Bennett misunderstands that the *Blockburger* multiplicity analysis refers to the elements of the offenses, not whether a single act could violate multiple statutes.  The very premise of *Blockburger* and its progeny is that the "same act or transaction"—here, Bennett's presence and disorderly behavior at the Capitol Grounds—can form the basis of multiple criminal charges so long as each Count requires proof of a fact that the others do not.  *Mahdi*, 598 F.3d at 888; *Manafort*, 313 F. Supp. 3d at 314 (counts can be "based upon the exact same set of facts and circumstances," if *Blockburger* is satisfied). The fact that Bennett's conduct on January 6, 2021, has led to multiple related charges is unsurprising and ordinary in a criminal case.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that Bennett's motion be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:    *Nialah S. Ferrer*
_____
NIALAH S. FERRER
Assistant United States Attorney
New York Bar No. 5748462
United States Attorney's Office
District of Columbia
(202) 557-1490
nialah.ferrer@usdoj.gov

/s/Anna Z. Krasinski
ANNA Z. KRASINSKI
Assistant United States Attorney
New Hampshire Bar No. 276778
United States Attorney's Office
Detailed from the District of New Hampshire
(202) 809-2058
anna.krasinski@usdoj.gov