UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRADLEY STUART BENNETT,<br><br>Defendant. | Criminal Action No. 21-312 (JEB) |

## MEMORANDUM OPINION

Defendant Bradley Stuart Bennett was a member of the crowd that stormed the U.S. Capitol on January 6, 2021. He is charged with multiple criminal counts related to that conduct. With trial now approaching, the Government has filed four Motions *in Limine* to preclude certain evidence, three of which are nearly identical to motions the Court has ruled on in other January 6 cases. It will largely grant these Motions.

**I.      Background and Legal Standard**

Bennett has been indicted on six counts: Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count I); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count II); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count III); Entering and Remaining in the Gallery of Congress, in violation of 40 U.S.C. § 5104(e)(2)(B) (Count IV); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count V); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count VI). See ECF No. 122 (Superseding Indictment). The Government has now filed Motions *in Limine*.

1

"[M]otions *in limine* are a means for arguing why 'evidence should or should not, for evidentiary reasons, be introduced at trial.'" Graves v. District of Columbia, 850 F. Supp. 2d 6, 11 (D.D.C. 2011) (emphasis omitted) (quoting Williams v. Johnson, 747 F. Supp. 2d 10, 18 (D.D.C. 2010)).  They "are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" Id. at 10 (quoting Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990)).  The court has "broad discretion in rendering evidentiary rulings, . . . which extends . . . to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial." Barnes v. District of Columbia, 924 F. Supp. 2d 74, 79 (D.D.C. 2013).

Although state and federal rulemakers have the prerogative to fashion standards for the inclusion of evidence at trial, the Constitution guarantees to criminal defendants the right to a "meaningful opportunity to present a complete defense." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)).  This limits courts' ability to impose "arbitrary" rules of evidence, including those that exclude "important defense evidence" without serving "any legitimate interests," or are otherwise "disproportionate to the purposes they are designed to serve." Id. at 324–25 (internal quotation marks omitted).  At the same time, it falls within a court's discretion to exclude evidence that is not relevant or whose probative value is outweighed by prejudicial factors. Id. at 326; see also id. at 330 (noting that evidentiary rules seek to "focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues"); Fed. R. Evid. 401, 403.

**II.     Analysis**

The Government has filed four Motions *in Limine*.  They respectively request that this Court restrict: (1) arguments and evidence regarding Capitol Police behavior on January 6, 2021,

see ECF No. 104 (Entrapment-by-Estoppel Motion); (2) cross-examination regarding the Secret Service's protocols for protecting high-ranking executive officials, see ECF No. 105 (Secret-Service Motion); (3) evidence regarding the precise locations of U.S. Capitol Police surveillance cameras, see ECF No. 106 (Camera Motion); and (4) arguments and evidence concerning the Government's treatment of Bennett's co-defendant and its purported selective prosecution of Bennett.  See ECF No. 107 (Selective-Prosecution Motion).  The Court addresses each in turn.

    A.  Entrapment-by-Estoppel Motion

The Government first seeks to preclude Bennett from (1) raising a defense of entrapment by law-enforcement officials, and (2) offering any evidence or argument that such officials' failure to act made Defendant's entry into the restricted area lawful.  In the alternative, it asks the Court to preclude Bennett from offering any evidence or argument concerning alleged inaction by such officials "unless the defendant specifically observed or was otherwise aware of such conduct."  Entrapment-by-Estoppel Mot. at 1.  In response, Defendant contends that although he does not intend to make an entrapment argument, the Court should permit "evidence of inaction by law enforcement to the extent it relates to his state of mind and to the extent Mr. Bennett observed, was aware of, or could have reasonably perceived such inaction."  ECF No. 114 (Def. Resp.) at 1–2.  This Court has previously agreed that precluding all evidence of potential law-enforcement inaction on January 6 before trial "would be premature and should await the presentation of evidence at trial."  United States v. Mock, 2023 WL 3844604, at *3 (D.D.C. June 6, 2023) (quoting United States v. Carpenter, 2023 WL 1860978, at *3 (D.D.C. Feb. 9, 2023)).

Following this well-trodden path, the Court will not at this time "categorically preclude" evidence relevant to "an entrapment-by-estoppel defense."  Id.  It will, however, grant the Government's alternative request.  As in Mock, Defendant here largely does not — indeed,

cannot — argue that evidence of police inaction is admissible if he did not observe it. Id. (stating that "unobserved behavior" would be "irrelevant under Federal Rule of Evidence 401"). To the extent Defendant contends that evidence of events he conceivably "could have" perceived are relevant, he is mistaken, as such evidence would not bear on his state of mind. See Def. Resp. at 2 (emphasis added). Since Defendant will still be able to introduce evidence of what he actually observed, the Court will grant the Government's Motion in part.

    B.  Secret-Service Motion

The Government next moves to limit cross-examination of U.S. Secret Service witnesses, seeking to exclude testimony about agency protocols for protecting high-ranking executive-branch officials at the U.S. Capitol. See Secret-Service Mot. at 2. Out of a concern for national security, the Government requests that the questioning of such witnesses be limited to whether the Capitol and its grounds were "restricted" on January 6. Id. at 3–4. Although Bennett "does not intend to cross-examine the potential Secret Service witness" on the sensitive topics the Government identifies, he seeks to ensure that he may still "ask questions about the location of then-Vice President Pence during the relevant period." ECF No. 115 (Def. Resp.) at 1.

The Court perceives no actual dispute between the parties. The Government's direct examination will purportedly reveal that "at the time of the Capitol breach, Secret Service agents were on duty to protect Vice President Mike Pence and his two immediate family members, all of whom were present at the Capitol." Secret-Service Mot. at 2. Defendant may therefore cross-examine the witness on that topic. Because the Government represents that the security protocols it wishes to exclude will be beyond the scope of direct examination, the Court will exclude such testimony — with the caveat that Defendant may cross-examine within the scope of

4

direct testimony should the Government elicit these details there.  See United States v. Bru, 2023 WL 4174293, at *2 (D.D.C. June 26, 2023) (granting identical motion).

    C.  Camera Motion

The Government also moves to exclude information about the precise locations of Capitol Police cameras, citing national-security concerns.  See Camera Mot. at 2–4.  It additionally requests that, should the defense believe during the course of trial that such locations have become relevant, the Court conduct an *in camera* hearing to resolve the issue.  Id. at 5.  The Court recently granted a virtually identical motion with the same proviso in another January 6 trial.  See Mock, 2023 WL 3844604, at *2.  It again finds that balance appropriate here, particularly because Defendant agrees that any such questions are best addressed at trial and "outside the presence of the jury."  ECF No. 113 (Def. Resp.) at 1–2.

Defendant is unlikely to need to probe the precise placement and scope of individual security cameras; general descriptions of each camera's location, along with the video footage each shows, should suffice.  The Government, moreover, raises significant national-security concerns with identifying camera locations, which would reveal areas not under video surveillance and could thus result in security breaches.  See Camera Mot. at 4.  The Court will accordingly preclude the defense from questioning witnesses about the precise location of Capitol Police cameras but will allow *in camera* proceedings should Bennett establish during trial that presentation of such locations is necessary.

The Court will not address Defendant's attempt to trojan-horse a discovery request for maps of the Capitol without the camera locations into his response to this Motion, see Def. Resp.

at 2, as the Government represents that the request has already been fulfilled, see ECF No. 126 (Gov't Reply) at 2, and Bennett can file an appropriate motion if that is not the case.

### D. Selective-Prosecution Motion

The Government last requests limitations on any argument that it unfairly singled out Defendant for prosecution and any evidence of his co-defendant's plea agreement offered to further such argument. See Selective-Prosecution Mot. at 1–2. The Government acknowledges, however, that if Bennett's co-defendant were to testify, her plea agreement might have some relevance to her credibility as a witness. Id. at 3 & n.1; see also United States v. Jackson, 849 F.3d 540, 555–56 (3d Cir. 2017) (introducing evidence of co-conspirator's guilty plea "allow[s] the jury accurately to assess the credibility of the [co-conspirator] witness"). Otherwise, it maintains, evidence of the plea would be irrelevant and introduced merely to "encourage[] jury nullification." Selective-Prosecution Mot. at 1. Defendant denies any plans to "argue or introduce evidence of [his co-defendant's] plea for the purpose of jury nullification." ECF No. 119 (Def. Resp.) at 2. He nevertheless "reserves the ability to . . . introduce evidence of [the] plea for purposes other than jury nullification," id., and seemingly does not rule out offering such evidence for purposes of addressing selective prosecution. See id. at 1 (citing Jackson's statement that a co-conspirator's plea may be admitted to "eliminate any concern that the jury may harbor concerning whether the government has selectively prosecuted the defendant").

The Court will grant the Government's Motion because "the issue of selective prosecution is one to be determined by the court, as it relates to an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which she was charged." United States v. Washington, 705 F.2d 489, 495 (D.C. Cir. 1983) (internal citations omitted); see also United States v. Sutton, 636 F. Supp. 3d 179, 209–10

(D.D.C. 2022) (granting motion *in limine* and describing selective-prosecution argument as "irrelevant, inappropriate for consideration by the jury," and prone to "invit[ing] jury nullification"). Indeed, Bennett has filed a Motion to Dismiss Count I on the basis of selective prosecution, which the Court will dispose of separately. See ECF No. 97 (Motion to Dismiss). To the extent he relies on Jackson to contend that — nullification arguments aside — he may offer his co-defendant's plea to plant the seed of a selective-prosecution argument, he misreads that case. See Def. Resp. at 1. Jackson holds that a co-conspirator's plea agreement may be relevant to witness credibility for its ability to assuage a jury's worries about selective prosecution, not to provoke such concerns. See 849 F.3d at 555–56 (noting that when co-conspirator testifies, "[q]uestions will arise in the minds of the jurors whether the co-conspirator is being prosecuted, why he is testifying, and what he may be getting in return"). Simply put, a selective-prosecution defense has no place before a jury. The Court will therefore grant the Government's Motion to disallow argument or evidence on that subject.

### III. Conclusion

The Court, accordingly, will grant the Government's Motions *in Limine* regarding Secret Service testimony, Capitol camera locations, and selective-prosecution arguments in full and will grant its Motion regarding entrapment by estoppel in part. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: September 25, 2023