UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRADLEY STUART BENNETT,<br><br>Defendant. | Criminal Action No. 21-312 (JEB) |

## MEMORANDUM OPINION

Defendant Bradley Stuart Bennett was a member of the crowd that stormed the U.S. Capitol on January 6, 2021. He is charged with multiple criminal counts related to that conduct: Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count I); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count II); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count III); Entering and Remaining in the Gallery of Congress, in violation of 40 U.S.C. § 5104(e)(2)(B) (Count IV); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count V); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count VI). See ECF No. 122 (Superseding Indictment).

With trial now approaching, Bennett has filed a Motion *in Limine* to preclude several categories of evidence and a Motion to Dismiss the Indictment, which mainly rehashes several arguments that this Court, others in this district, and the D.C. Circuit have previously rejected. The Court will grant in part Bennett's Motion *in Limine* as it relates to evidence the Government has no plans to introduce. Otherwise, the Court will deny his Motions.

1

I.  **Legal Standard**

   A.  <u>Motion to Dismiss Indictment</u>

A defendant may move prior to trial to dismiss an indictment (or specific counts) on the basis that there is a "defect in the indictment," including a "failure to state an offense." Fed. R. Crim P. 12(b)(3)(B)(v). "The operative question is whether the allegations, if proven, would be sufficient to permit" the factfinder to conclude that the defendant committed the criminal offense as charged. See <u>United States v. Sanford, Ltd.</u>, 859 F. Supp. 2d 102, 107 (D.D.C. 2012); <u>United States v. Bowdoin</u>, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974).

In reviewing the indictment, a court affords deference to the "fundamental role of the grand jury." <u>United States v. Ballestas</u>, 795 F.3d 138, 148 (D.C. Cir. 2015) (quoting <u>Whitehouse v. U.S. Dist. Court</u>, 53 F.3d 1349, 1360 (1st Cir. 1995)). As a result, "[a]dherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." <u>United States v. Hitt</u>, 249 F.3d 1010, 1016 (D.C. Cir. 2001). A court accordingly cabins its analysis to "the face of the indictment and, more specifically, the language used to charge the crimes." <u>United States v. Sunia</u>, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (emphases and internal quotation marks omitted).

   B.  <u>Motion in *Limine*</u>

"[M]otions *in limine* are a means for arguing why 'evidence should or should not, for evidentiary reasons, be introduced at trial.'" <u>Graves v. District of Columbia</u>, 850 F. Supp. 2d 6,

11 (D.D.C. 2011) (emphasis omitted) (quoting Williams v. Johnson, 747 F. Supp. 2d 10, 18 (D.D.C. 2010)). They "are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" Id. at 10 (quoting Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990)). The court has "broad discretion in rendering evidentiary rulings, . . . which extends . . . to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial." Barnes v. District of Columbia, 924 F. Supp. 2d 74, 79 (D.D.C. 2013).

Although state and federal rulemakers have the prerogative to fashion standards for the inclusion of evidence at trial, the Constitution guarantees to criminal defendants the right to a "meaningful opportunity to present a complete defense." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)). This limits courts' ability to impose "arbitrary" rules of evidence, including those that exclude "important defense evidence" without serving "any legitimate interests," or are otherwise "disproportionate to the purposes they are designed to serve." Id. at 324–25 (internal quotation marks omitted). At the same time, it falls within a court's discretion to exclude evidence that is not relevant or whose probative value is outweighed by prejudicial factors. Id. at 326; see also id. at 330 (noting that evidentiary rules seek to "focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues"); Fed. R. Evid. 401, 403.

**II.     Analysis**

Bennett has filed a Motion to Dismiss the Indictment and a Motion *in Limine*. See ECF Nos. 99 (Mot. *in Limine*), 103 (Mot. to Dismiss). The Court examines them separately.

A. Motion to Dismiss Indictment

Bennett argues that Count I of the Superseding Indictment — Obstruction of an Official Proceeding — is insufficient and that, in any case, it should be dismissed because § 1512 is unconstitutionally vague. He also maintains that Counts II through VI are multiplicitous and therefore violate the Double Jeopardy Clause. The Court will consider each argument in turn.

1. *Count I: Failure to Allege a Corrupt Act*

Bennett first seeks dismissal of Count I because the Indictment "fails to allege any corrupt act or motive." Mot. to Dismiss at 6. Specifically, he seizes on its lack of any allegation that "he sought any benefit" through his participation in the insurrection, proof of which he argues is necessary for a conviction under 18 U.S.C. § 1512(c). See Mot. to Dismiss at 12 (citing United States v. Fischer, 64 F.4th 329 (D.C. Cir. 2023)).

Defendant's contention founders because an indictment need not allege facts that establish all elements of an offense. Rather, it is "generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" Hamling, 418 U.S. at 117 (quoting United States v. Carll, 105 U.S. 611, 612 (1882)). "[T]o be sufficient, [it] need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." United States v. Verrusio, 762 F.3d 1, 13 (D.C. Cir. 2014). As this Court has explained in rejecting a similar challenge by a January 6 defendant, the Indictment here is sufficient because it "set[s] out in clear and unambiguous terms" the offenses with which Defendant is charged. United States v. Ballenger, 2022 WL 14807767, at *1 (D.D.C. Oct. 26, 2022).

Bennett also points out that the original Indictment — the only one returned at the time this Motion to Dismiss was filed — did not identify which congressional proceeding he allegedly obstructed. See Mot. to Dismiss at 6. He seems to believe that this omission renders the Indictment insufficient as well. Id. As the Government points out, however, the Superseding Indictment has now cured that issue. See ECF No. 121 (Gov't Resp.) at 6; Superseding Indictment at 1 (specifying obstruction of "Congress's certification of the Electoral College vote"). There is therefore no insufficiency to speak of.

2. *Count I: Unconstitutionally Vague*

Bennett next moves to dismiss Count I on the ground that § 1512(c) is unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. See Mot. to Dismiss at 13–15. That statute reads in part:

> (c) Whoever corruptly —
> . . .
> (2) . . . obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

Generally, a statute violates due process only if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes." Johnson v. United States, 576 U.S. 591, 595 (2015). A statute is valid, conversely, even if it requires individuals to use their own judgment to determine if an action is illegal. Id. at 603–04 ("[W]e do not doubt the constitutionality of laws that call for the application of a qualitative standard . . . to real-world conduct."). It is the citizen's duty to know the law, and a law is not unconstitutionally vague simply because two citizens may interpret it differently. See United States v. Bronstein, 849 F.3d 1101, 1107 (D.C. Cir. 2017).

Bennett's argument here has already been rejected by courts in this district (including this one), which have offered full and persuasive analyses of motions that mirror his. See, e.g., United States v. Mock, 2023 WL 3844604, at *3–4 (D.D.C. June 6, 2023); United States v. Oseguera Gonzalez, 2020 WL 6342948, at *7 (D.D.C. Oct 29, 2020); United States v. Sandlin, 575 F. Supp. 3d 16, 30–34 (D.D.C. 2021); United States v. Mostofsky, 579 F. Supp. 3d 9, 26 (D.D.C. 2021). The reasoning in these opinions remains persuasive.

Defendant nonetheless argues that the D.C. Circuit's split decision in Fischer suggests that the term "corruptly" is unconstitutionally vague and requires this Court to reconsider its earlier decision in Mostofsky. That mischaracterizes what actually occurred in Fischer. The Circuit decided the case 2–1, with Judge Florence Pan writing the lead opinion and Judge Justin Walker writing a concurrence to lay out his interpretation of "corruptly." Although he and Judge Pan disagreed on the precise definition of the term, neither judge found "corruptly" overly vague. Judge Pan did not take a position on how to define the term, concluding that § 1512(c) was not vague under any definition of "corruptly." 64 F.4th at 339–40. Judge Walker, on the other hand, did define the term, but he also did not find that the statute was unconstitutionally vague. Id. at 352, 361 (Walker, J., concurring in part). While there was no consensus as to the exact definition of the term, neither judge in the majority evinced any belief that § 1512(c)(2) was unconstitutionally vague. Defendant's argument thus does not succeed.

    3. *Count I: Failure to Allege Obstructive Conduct*

In Bennett's last argument concerning Count I, he again contends that the Government fails to state an offense under § 1512(c)(2), this time because the Indictment does not allege any obstructive conduct related to "destroy[ing], alter[ing], or otherwise prevent[ing] anyone from introducing evidence in an official proceeding." Mot. to Dismiss at 15. Once again, Fischer

6

forecloses such a position. See 64 F.4th at 336–37 (interpreting statute to "reach a wide range of obstructive acts, not just those limited to tampering with documents or objects"). Bennett, in fact, acknowledges that this Motion is largely meant to preserve the issue for appeal. See Mot. to Dismiss at 16 n.2. Count I thus withstands all challenges.

4. *Counts II–VI: Multiplicity*

Bennett next targets Counts II through VI as violative of the Double Jeopardy Clause, which protects against "multiple punishments for the same offense." United States v. Weathers, 493 F.3d 229, 233 (D.C. Cir. 2007) (internal citation and quotation marks omitted). Because "the same facts that would satisfy the elements of Count [III] . . . would also satisfy the elements of every other Count," Bennett claims, the Court must "dismiss the indictment and order the government to merge Mr. Bennett's alleged acts into a single count if he is re-indicted." Mot. to Dismiss at 17.

If Congress wishes to impose multiple punishments for offenses arising out of the same single act or course of conduct, "imposition of such sentences does not [necessarily] violate Double Jeopardy." United States v. McLaughlin, 164 F.3d 1, 8 (D.C. Cir. 1998). Some indictments that charge a single offense in several counts, however, may indeed contravene the Fifth Amendment because they could lead to multiple punishments for a single crime. "Duplicative or multiplicative indictments also run the risk of 'some psychological effect upon a jury by suggesting to it that [the] defendant has committed not one but several crimes.'" United States v. Han, 280 F. Supp. 3d 144, 152 (D.D.C. 2017) (quoting United States v. Ketchum, 320 F.2d 3, 8 (2d Cir. 1963)).

In Blockburger v. United States, 284 U.S. 299 (1932), the Supreme Court provided a test to determine when the Government may constitutionally indict a defendant on multiple counts

7

based upon the same conduct. "[T]he test to be applied to determine whether there are two offenses or only one[] is whether each provision requires proof of a fact which the other does not." Id. at 304. Put differently, a "single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." Id. (quoting Morey v. Commonwealth, 108 Mass. 433, 434 (1871)). The test for multiplicity thus "is not whether two counts are based on the same set of facts; rather it is whether the statutory elements of the two offenses are the same." United States v. Manafort, 313 F. Supp. 3d 311, 314 (D.D.C. 2018).

Defendant's multiplicity arguments here run aground because each of the offenses charged in the relevant counts "requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304. This Court and other courts in this district have uniformly rejected arguments that various subsections of 18 U.S.C. § 1752 and 40 U.S.C. § 5104 — the bases for Counts II through VI here — are duplicative. See, e.g., Ballenger, 2022 WL 14807767, at *2 (applying Blockburger test to show that § 1752(a)(2) required proof of element that § 5104(e)(2)(G) did not and vice versa); United States v. Dennis, No. 21-679, ECF No. 45 at 2–3 (D.D.C. Dec. 6, 2022) (same as to § 1752(a)(1), § 1752(a)(2), § 5104(e)(2)(D), and § 5104(e)(2)(F)); United States v. Macandrew, 2022 WL 17983533, at *1 (D.D.C. Dec. 27, 2022) (same as to § 1752(a)(1), § 1752(a)(2), § 5104(e)(2)(D), and § 5104(e)(2)(G)); United States v. Munchel, 2023 WL 2992689, at *4–5 (D.D.C. Apr. 18, 2023) (same as to § 1752(a)(1), § 1752(a)(2), § 5104(e)(2)(B), § 5104(e)(2)(D), and § 5104(e)(2)(G)).

Double Jeopardy is no stronger a defense here than in those prior cases. Count II, for example, requires that the defendant was in "a restricted building [or] grounds" "without lawful

authority" — an element not required by Counts III, IV, V, or VI. See Superseding Indictment at 2. Count IV, in contrast to Count II, requires proof that the defendant "entered [or] remained in the gallery of either House of Congress, without authorization to do so." Id. These two elements are distinct because "[t]he Capitol is not always a 'restricted building or grounds' . . . and the term 'restricted building or grounds' covers far more than the Capitol building." United States v. McHugh, 2023 WL 2384444, at *6 (D.D.C. Mar. 6, 2023) (citation omitted). The same locational elements differentiate Count III from Count V, as the former prohibits "disorderly [or] disruptive conduct in . . . proximity to[] a restricted building [or] grounds" while the latter forbids such conduct "in any of the Capitol Buildings." Superseding Indictment at 2–3.

The elements unique to each count do not end there. Count III requires proof that a defendant's conduct "in fact impede[d] [or] disrupt[ed] the orderly conduct of Government business [or] official functions," which is not an element of Count II, IV, V, or VI. Id. at 2 (emphasis added). Count V, meanwhile, requires that the defendant "inten[ded] to impede, disrupt, [or] disturb the orderly conduct of a session of Congress and either House of Congress," which is an element not required for any of the other counts. Id. at 3 (emphasis added). Finally, Count VI alone requires proof that the defendant "paraded, demonstrated, [or] picketed." Id. In light of these differences, no one count must be dismissed as duplicative of another.

To the extent Defendant suggests that even Count I might be duplicative of other counts, see Mot. to Dismiss at 17, he is incorrect. See Munchel, 2023 WL 2992689, at *4 (finding § 1512(c) requires proof of facts not required by § 1752(a) and § 5104(e)(2) and vice versa). Count I requires proof that the defendant acted "corruptly," for instance. See Superseding Indictment at 1. No matter the precise definition of "corruptly," that intent requirement does not appear in any other count. Id. at 1–3. The other counts likewise contain elements not found in

9

Count I, such as entering a restricted area or a gallery of Congress, engaging in disorderly conduct, and parading, demonstrating, or picketing.  Id.  The Indictment, consequently, will not be dismissed.

    B.  Motion *in Limine*

Turning to evidentiary matters, Bennett has filed a single Motion *in Limine* addressing several categories of evidence.  At the outset, the Court will grant his Motion as to that evidence the Government does not intend to introduce — namely, information about his financial status, gun ownership, and the Government's decision to label him as a possible terrorist.  See Mot. *in Limine* at 1–2; ECF No. 118 (Gov't Resp.) at 4.  What remain are three disputed types of evidence: (1) videos showing the events surrounding the Capitol on January 6 in general; (2) Defendant's online posts dated after January 6; and (3) the circumstances of Defendant's surrender.  The Court considers each category in turn.

    1.  *Background Videos*

Defendant objects to the admission of "[r]epeated video evidence of other protestors [*sic*] actions on January 6," which he maintains would be "highly prejudicial, inflammatory," and of "limited if any probative value."  Mot. *in Limine* at 4.  He also urges the Court to consider the availability of "evidentiary alternatives" for "lay[ing] a foundation of the overall events of January 6, 2021, such as having an agent describe the events from the witness stand."  Id.

As a general matter, the Government must be given leeway to place a defendant's actions into context and to assist the jury in "organiz[ing] and evaluat[ing] evidence which is factually complex and fragmentally revealed."  United States v. Lemire, 720 F.2d 1327, 1348 (D.C. Cir. 1983); see United States v. Carpenter, 2023 WL 1860978, at *3 (D.D.C. Feb. 9, 2023).  This category of evidence would permit the Government to do just that.  Perhaps more importantly,

10

however, general evidence of the events of January 6 is probative of multiple elements of the crimes with which Bennett is charged.  See Fed. R. Evid. 401.  Specifically, to prove that he violated 18 U.S.C. § 1512(c)(2) (Count I), the Government must establish that he "obstruct[ed] . . . an[] official proceeding, or attempt[ed] to do so."  Background video evidence is plainly probative of whether there was an official proceeding and whether such proceeding was in fact disrupted.  Id.; Carpenter, 2023 WL 1860978, at *3.

Nor does any prejudice or cumulativeness make this evidence categorically inadmissible. As this Court has previously concluded in denying a nearly identical motion, "In the context of the charges brought against [Bennett], the weighty probative value of evidence that broadly depicts what happened on January 6 outweighs any potential prejudice or cumulativeness." Carpenter, 2023 WL 1860978, at *4.  Even if witness testimony regarding the events of January 6 "offered substantially the same . . . probative value" as video evidence of the same, Defendant does not explain how that testimony would result in a "lower danger of unfair prejudice." Henderson v. George Washington Univ., 449 F.3d 127, 137 (D.C. Cir. 2006).  The Court at this point thus sees no reason to exclude the video form of the evidence in question, although Bennett may raise specific objections on this topic during trial.

    2.  *Posts After January 6*

Bennett next seeks to preclude public posts he made after the events of January 6, 2021, asserting that his "political and personal views . . . after the offense conduct concluded [are] not relevant."  Mot. *in Limine* at 5.  The Government responds that an order limiting such evidence would interfere with its ability to prove Bennett's intent.  See Gov't Resp. at 6.

The Government has the better of the argument.  Bennett is no doubt correct that some of his public commentary after the date of his offense will be irrelevant.  It is quite possible,

however, that some posts will be probative of his actions that day as well as his intent. Indeed, the Government represents that hours after Bennett left the Capitol, he posted that he had "stormed" the building and went "in that senate room." Gov't Resp. at 3. Such statements, while after the fact, are highly relevant to proving Bennett's presence in restricted areas and his intent in entering the Capitol. See Superseding Indictment at 1–3 (charging Defendant with entering or remaining in certain areas and with various acts committed knowingly, willfully, or corruptly). Given this obvious relevance, the Court will not issue a blanket order precluding posts made after January 6. Bennett remains free, however, to make more specific objections to evidence during trial.

        3. *Circumstances of Self-Surrender*

Defendant last seeks exclusion of evidence concerning the circumstances of his surrender, which he maintains "do[] not show attempted flight as Defendant did voluntarily surrender." Mot. *in Limine* at 5; see Fed. R. Evid. 403. He appears to argue that although 12 days elapsed between when he learned of the arrest warrant and his voluntary surrender, he spent "several" of those days "attempting to secure legal counsel" rather than eluding arrest. Id. at 3. The Government sees the evidence differently. It points to a statement of Bennett's — recorded before the FBI informed him of his need to surrender, but after he knew that his co-defendant had been arrested — admitting that the FBI was "probably looking for him" and that he was "laying low." Id.; Gov't Resp. at 7. That statement in combination with his substantial delay in surrendering, the Government argues, supports an inference that he took "steps to evade arrest." Gov't Resp. at 7. The Government further asserts that Defendant's flight evinces his "consciousness of guilt" because he also "destroy[ed] evidence" by throwing his phone out prior to surrender. Id. The parties agree that if the foregoing evidence is admitted, it would be

appropriate to instruct the jury that flight may be motivated by factors consistent with innocence. Id.; Mot. *in Limine* at 5–6.

In general, "[e]vidence of flight is admissible as indicative of a guilty mind where there is an adequate factual predicate creating an inference of guilt of the crime charged." United States v. Esquivel, 755 F. Supp. 434, 440 n.3 (D.D.C. 1990). Although the Court reserves final judgment, Defendant has not persuaded the Court at this stage that his recorded statement explaining his strategy of "laying low" is an insufficient factual predicate for the inference of a guilty mind. Bennett's competing explanation for his delayed voluntary surrender may convince a jury, but it is not so conclusive as to render the Government's evidence irrelevant or unfairly prejudicial. See United States v. Morrow, 2005 WL 3159572, at *28 (D.D.C. Apr. 7, 2005) (denying motion *in limine* because it was "quite possible" that defendant's flight from police was "probative of consciousness of guilt" where defendant argued he could have fled for other reasons, including to escape fire from law enforcement). The Court will therefore deny Defendant's Motion, but will consider any renewed objection based on the evidence actually presented at trial. As the parties agree on the propriety of a flight instruction, the Court will give one to the jury if any evidence of flight is admitted.

### III.     Conclusion

The Court, accordingly, will grant Bennett's Motion *in Limine* to exclude evidence about his financial status, gun ownership, and government-imposed terrorist label. It will, however deny that Motion in regard to background video evidence, Defendant's public posts after January 6, and evidence concerning his surrender. The Court will also deny Defendant's Motion to Dismiss. A separate Order so stating will issue this day.

/s/ James E. Boasberg<br>JAMES E. BOASBERG<br>Chief Judge

Date:  October 4, 2023