**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Case No.: 1:21-CR-312-JEB

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | |
| BRADLEY BENNETT | **Reply to Government's Opposition** |
| Defendant. | **to Continue Trial** |

The Defendant, Mr. Bennett, by and through Counsel, hereby submits to the Court its Reply to the Government's Opposition to continue the jury trial currently set to commence January 16, 2024, in the above-captioned case. In support of this Reply, Mr. Bennett states the following:

## PROCEDURAL BACKGROUND

The Defendant Bradley Bennett is charged by superseding indictment with one felony count of obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2) and five misdemeanor counts. DE 122.   All counts in the superseding indictment are based on allegations of his participation in the events at the Capitol on January 6, 2021.  This matter is scheduled for trial before this Court on January 16, 2024.

On December 13, 2023, the United States Supreme Court granted certiorari in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), *cert. granted* 23-5572. *Fischer* presents the issue of whether the U.S. Court of Appeals for the District of

1

Columbia Circuit erred in construing 18 U.S.C. § 1512(c) (hereafter "1512 count") which prohibits obstruction of congressional inquiries and investigations, to include acts unrelated to investigations and evidence.

Mr. Bennett moved to continue his trial proceedings pending a decision from the Supreme Court on the appropriate interpretation and application of 18 U.S.C. § 1512(c ).  DE 149.  The government opposed Mr. Bennett's motion.  DE 150.


## ARGUMENT

In *Int'l Refugee Assistance Project v. Trump*, 218 WL 1932681, 323 F. Supp. 3d 726 (U.S. Dist. 2018), the court analyzed when a pending trial matter should be stayed pending the dispositive outcome of a matter before the Supreme Court. Quoting the Supreme Court in *Burwell v. Hobby Lobby Stores, Inc,* 134 S. Ct 2751, 189 Ed. 2d 675 (2014), the District Court held, the power to stay proceedings is incidental to the power in every court to control the disposition. *Int'l Refugee Assistance Project at16.*

In staying the proceedings, the court In *Int'l Refugee Assistance Project* concluded that judicial economy would be served by a stay because the resolution of the issues before the Supreme Court would likely have a direct impact on the future course of the case before the district court. In arriving at its decision, the district court specifically questioned, first, if the questions presented are framed not in terms of the likelihood of success on them, but as "specific legal questions to be resolved by the Supreme Court."  Second, if the Supreme Court's rule would likely

simplify the Court's task in resolving the issues. *Id.*

The Supreme Court's decision in *Fischer* will address a legal issue that directly impacts the future course of Mr. Bennett's proceedings. Second, should the Supreme Court give a favorable ruling in *Fischer,* the proceedings will be simplified and Mr. Bennett will no longer face a felony count.

In *United States v. Adcox*, 2016 U.S. Dist. Lexis 18949, the district court granted a joint motion to stay the criminal proceedings.  In reaching its decision, the district court reviewed whether the Supreme Court's ruling directly impacts the defendant's pending motion to dismiss; how the district court would instruct the jury when the matter goes to trial; fairness, and judicial economy so the defendant and the court are not forced to expend its resources and time addressing motions, additional discovery matters, and potential jury instructions when the Supreme Court's decision could eliminate the need for a trial.   *Id*. at 3.

In Mr. Bennett's case, the Supreme Court's decision in *Fischer*, would both clarify a legal question and simplify the Court's task in the instant matter. The Supreme Court's ruling would directly impact defendant's motion to dismiss; impact how the district court would instruct the jury and how the parties would present and defend the evidence. DE 103.   A stay in Mr. Bennett's case is necessary to insure fairness and judicial economy so the defendant and the court are not forced to expend its resources and time addressing matters the Supreme Court's decision could eliminate.

Mr. Bennett is not charged with obstruction related to an investigation or to any

obstruction related to evidence.  Count One of the Superseding Indictment alleges, "Mr. Bennett attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S. C. §§ 15-18 in violation of 18 U.S.C. § 1512 (c). DE 122.  Hence, if the Supreme Court determines that the "1512 count" requires an element of acts related to investigations and evidence the Supreme Court's decision would eliminate Mr. Bradley's only felony count.

Other district courts have stayed proceedings related to "1512 counts" after the Supreme Court granted Cert. in *Fischer* on December 13, 2023.  On December 18, 2023, in *United States v. Davis*, 1:23-cr-00281-CJN-1, Judge Nichols, *sua sponte*, ordered Mr. Davis' jury trial be rescheduled for July 8, 2024, presumably in anticipation of  the Supreme Court's ruling on *Fischer*.  On December 19, 2023, In *United States v. Thomas Caldwell*, 1:22-CR-15-APM-10, Judge Mehta vacated sentencing scheduled for December 20, 2023.

In the Government's Opposition, the Government stated the resolution of *Fischer*, "[W]ill have no impact on the remaining counts" DE 150, p.1. However, this assertion is false.  From the defense posture, the "1512 count," is not only the most serious charge Mr. Bennet faces, but it is the only felony count he faces.  The impact of a felony conviction for Mr. Bennett has substantial and lasting consequences that he would not experience should he be convicted of only misdemeanor counts.  As a result, the defense trial strategy is naturally driven to prioritize an acquittal on the

"1512 count."  Should the "1512 count" no longer be an issue, the defense trial strategy and, perhaps, Mr. Bennett's decision to even go to trial would be greatly affected.  In the past, Mr. Bennett has considered accepting responsibility for all the misdemeanor counts and has indicated such to the Government in attempts to negotiate a dismissal of the "1512 count." However, to date, the government has been unwilling to engage in any plea negotiations that do not result in a conviction for the felony "1512 count."

The Government further contends that Mr. Bennett would not suffer any irreparable injury by proceeding even if the Supreme Court's ruling invalidated Bennett's conviction, DE 150, p.4.  Again, the Government's contention is false.  Mr. Bennett would be irrevocably stripped of a proper defense strategy if he improperly faces and defends a felony court.  As stated above, Mr. Bennett's entire defense strategy would be considerably altered should he no longer face the "1512 count."  If the 1512 count is later invalidated by the Supreme Court's ruling and Mr. Bennett is forced to defend himself against an improper felony count, Mr. Bennett will be stripped of making a fully informed decision as to whether to even go to trial.  Accordingly, forcing him to make trial decisions based upon a possible improper felony charge would cause Mr. Bennett irreparable injury.

Unlike the misdemeanor counts, the jury instructions for the "1512 count," direct the jury that they must find Mr. Bennett acted with "corrupt intent," in order to convict on the felony count.  The government will therefore be required to present evidence they contend prove Mr. Bennett's mental state was "corrupt" when he

entered the Capitol on January 6, 2023.  As a result, it is natural to predict the government will argue repeatedly to the jury that Mr. Bennett acted with corrupt intent on January 6, 2023.  The Court will also instruct the jury on the definition of "corrupt intent."   It would be impossible to determine the extent allegations of and purported evidence of Mr. Bennett's "corrupt mental state" coupled with a jury instruction on "corrupt intent" would impact the jury's decision not only on the "1512 count," but on the remaining misdemeanor counts as well.  Vacating Mr. Bennett's "1512 count" in the future would not remove the prejudicial taint of having to defend the misdemeanors in a trial where the government is committed to proving Mr. Bennett is capable of, and in fact did, act with corrupt intent on January 6, 2021.

In their opposition, the government argues that the government and the public have a strong interest in a timely adjudication in this case.  DE 150, p.1.  Mr. Bennett, however, has a constitutional right to a fair trial.  A fair trial includes being tried under statutes that the Supreme Court has determined are applicable to Mr. Bennett's alleged offense conduct.

Mr. Bennett's case has been pending for some time.  Mr. Bennett, however, was unrepresented during most of that time-period.  Undersigned counsel was assigned to represent Mr. Bennett in March, 2023.  The discovery materials were voluminous.   Since undersigned counsel begin representing Mr. Bennett, there has only been one prior scheduled trial date.  Mr. Bennett's trial matter was continued from its first setting in October of 2023 to the present setting of January 16, 2024

due to Mr. Bennett's emergency medical condition.

There is no benefit to the public to try Mr. Bennett immediately under a statute whose very application to Mr. Bennett's case is pending a ruling from the Supreme Court. The public will not benefit from gambling with judicial resources on whether the Supreme Court's ruling will or will not impact Mr. Bennett's trial.

## **CONCLUSION**

Continuing Mr. Bennett's trial pending the Supreme Court's ruling in *Fischer* will allow this trial to go forward with the "1512 count" legal issues resolved and in the most efficient way possible. The Supreme Court's clarification of the appropriate applicability of 18 U.S.C. 1512 and the required mental state for a violation of the statute will provide critical guidance to this Court, prosecutors, and defense counsel. Delaying Mr. Bennett's trial until the Supreme Court rules in *Fischer* is necessary to insure Mr. Bennett a fair trial.

WHEREFORE, the defense respectfully requests the jury trial scheduled for January 16, 2024, be stayed until after the Supreme Court issues a ruling in *Fischer*.

Respectfully submitted, this the 27th day of December, 2023.

/s/Leza Lee Driscoll
/s/Rosemary Godwin
_____
LEZA LEE DRISCOLL
NC Bar No.: 20926
ROSEMARY GODWIN
NC Bar No. 18217
Assistant Federal Public Defenders
Eastern District of North Carolina

150 Fayetteville Street, Suite 450
Raleigh, North Carolina  27601
Telephone:  919-856-4236
Fax:  919-856-4477
Email:  leza_driscoll@fd.org
Email:  rosemary_godwin@fd.org
*Appointed Counsel for Defendant*

## Certificate of Service

I certify the foregoing Defendant's Reply was served on the following via the Court's electronic filing system:

ANNA Z. KRASINSKI
Assistant United States Attorney
United States Attorney's Office
Detailed from the District of New Hampshire
anna.krasinski@usdoj.gov

NIALAH S. FERRER
Assistant United States Attorney
Criminal Division
601 D. Street NW
Suite 6-1301
Washington, DC  20530
Nialah.ferrer@usdoj.gov

This the 27th day of December, 2023.

/s/Leza Lee Driscoll
/s/Rosemary Godwin
_____
LEZA LEE DRISCOLL
NC Bar No.:  20926
ROSEMARY GODWIN
NC Bar No.  18217
Assistant Federal Public Defenders
Eastern District of North Carolina
150 Fayetteville Street, Suite 450
Raleigh, North Carolina  27601
Telephone:  919-856-4236
Fax:  919-856-4477
Email:  leza_driscoll@fd.org
Email:  rosemary_godwin@fd.org
*Appointed Counsel for Defendant*

9